## TICE v. THE ZOUAVE and THE SEA KING.

(Circuit Court of Appeals, Second Circuit. December 7, 1899.)

No. 26.

COLLISION—TUGS CROSSING—INJURY TO TOW.

Where one of two tugs approaching each other on crossing courses at night and under difficult conditions of the tide, signaled her intention of crossing the bow of the other tug, when she could with greater safety have slackened speed and passed under her stern, she is chargeable with sole liability for a resulting collision by which one of the barges she had in tow was injured, the other tug being shown to have taken the best course possible to assist the maneuver after receiving the signal.

Appeal from the District Court of the United States for the Eastern District of New York.

Robt. D. Benedict, for the Sea King.
Le Roy S. Gove, for the Zouave.
J. E. Carpenter, for libelant.
Lawrence Kneeland, for barges.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The libelant's barge, while in tow of the steam tug Zouave, was injured by a collision with one of the barges then in tow of the steam tug Sea King. The collision took place in the evening of a clear night, in the East river, off Astoria on the Long Island shore between Hallet's Point and the Astoria Ferry. The libel was filed against both tugs, charging each with contributory fault. The court below condemned both tugs upon the theory that each was in fault for not obeying the inspector's rule (No. 5) which requires the pilot, when his steamer is nearing a short bend in the channel, when, from the height of the banks or other cause, an approaching vessel cannot be seen at a distance of

half a mile, to give a signal by one long blast of his whistle "when he shall have arrived within half a mile" of such bend. The court exonerated each tug for all other fault. The owner of each tug has appealed.

Upon the argument at the bar it was conceded by the counsel for both of the appealing parties that any failure on the part of either tug to give the bend signal was a remote fault, which did not contribute to the collision. Inasmuch as the vessels discovered one another when sufficiently far apart to have avoided the collision if both had performed the obligation imposed upon them by the circumstances of the situation, we agree with counsel that the real question is whether either or both were guilty of subsequent fault. Although the proofs disclose the conflict of testimony usual in collision causes, we have had little difficulty in reaching a conclusion upon the facts which we believe to be correct. We find them to be substantially as set forth in the very careful opinion of the district judge.

The Sea King, towing two barges, was proceeding down the river against a flood tide which was running three or four miles an hour. The barges were lashed together; the one on the port side being on a hawser of about 20 fathoms, and the one on the starboard side having a short bridle from the hawser to her bow. The vessels had experienced great difficulty in rounding Hallet's Point against the tide, but had succeeded in doing so, and, after keeping on near the Astoria shore, in the slacker tide, for a short time, had reentered the full tide, and headed about southwest, intending to cross the mouth of the east channel, and enter the west channel of the river. The tide sets over from the Astoria shore in a northerly direction towards Flood Rock, and its effect was to carry the tows on a course beyond and to the north of the course of the tug. They were proceeding very slowly, and were about 300 feet off the Astoria shore, when the Sea King heard a signal of two whistles from an approaching vessel, and discovered the green lights and towing lights of a tug and tow appearing from behind the ferry, which proved to be those of the tug Zouave and her tow. The Zouave was at that time about 600 yards away, and near the westerly side of the east channel, and was coming up the river at a speed, with the tide, of about six or seven miles an hour. She had five loaded boats in tow, three lashed on her port side and two on her starboard side; the libelant's boat being the outside starboard boat. The Sea King's red light was showing upon the starboard bow of the Zouave when the latter signaled to the Sea King. When the Zouave signaled, she also changed her course somewhat to port. Upon receiving the signal from the Zouave, the Sea King responded with a signal of two whistles, and promptly changed her course to port. The Zouave came on without slackening speed, and passed on the starboard side of the Sea King at a distance of about 50 or 60 feet. The Sea King, in the meantime, under the influence of her starboard wheel, had headed towards the Astoria shore about five points to the port of her former course. Her tows had attempted to follow her, but were prevented from doing so effectually by the tide, and probably had

not altered more than one or two points their previous course. As the Zouave passed the Sea King, she discovered that her starboard tows were likely to collide with the tows of the Sea King, and sounded danger signals, and reversed her engine. The Sea King promptly reversed her engine. It was then, however, too late to avoid collision, and the starboard tow of the Zouave collided with the starboard tow of the Sea King. After the Sea King went to port upon answering the Zouave's signal, the bridle of her starboard barge parted. Whether it was broken by the strain of this movement or by the shock of the collision cannot be satisfactorily determined by the testimony; nor can it be satisfactorily determined whether the accident contributed in any measure to the collision. If it did, so far as appears, the bridle was a suitable and sufficient instrumentality for the purpose to which it was applied.

Upon these facts there is no reason for imputing fault to the Sea King. When she received the signal from the Zouave indicating that the latter intended to pass on the starboard, and thus cross her bow, she was compelled to determine whether to keep on, reverse her engine, or endeavor to assist the Zouave by a movement to port. By keeping on, she would have brought herself more certainly into risk of collision, and it has not been suggested that she ought to have kept on. While reversing, she would have measurably lost control of her tows, and the tide would have carried them further towards Flood Rock and nearer the path of the Zouave than they were carried by her movement to port. Her movement to port was the maneuver best adapted to assist the Zouave, and, indeed, was the only practicable one under the circumstances. There was more sea room for the maneuver proposed by the Zouave at the time of the first signals than there was between the path of the Sea King and her tows and the Astoria shore; and, although the tide complicated the situation, and made the Zouave's attempted maneuver a perilous one, the Sea King could not foresee that it would not be successful, and, if the Sea King had foreseen that it could not succeed, she was under no other obligation than to do all that was in her power to assist the maneuver of the Zouave.

If the Zouave had fulfilled her obligations at the time the vessels discovered one another, there would have been no collision. Seeing on her starboard bow the red light of the Sea King, it was her duty to take the necessary measures for avoiding her incumbent when vessels are approaching on crossing courses. If the master of the Zouave had supposed that the Sea King was intending to go through the westward channel, there is little reason to doubt that he would have taken the proper measures. If he had slowed the speed of the Zouave, and signaled a proposition to pass astern of the Sea King, the latter, by keeping on, would have left sufficient room between herself and the Astoria shore to permit the Zouave and her tows to pass down in the slacker tide with safety. In three minutes the Sea King and her tows could have widened the distance between their path and the Astoria shore 200 or 300 feet. But he acted, as we think, upon the unwarranted supposition that the Sea King would go down by the eastward channel; and this is

the explanation of his attempt to pass on her starboard side,—an attempt which could have been safely accomplished if that had been her intended course. In undertaking to cross the bow of the Sea King, the Zouave adopted the most hazardous method of avoiding her. If it had been made by daylight, on such a tide, incumbered by tows as the Zouave was, it would have required great circumspection in that difficult channel to accomplish it safely. Made, as it was, at night, it involved chances that no prudent master ought to have encountered. Having taken an unnecessary risk, the Zouave did not comply with the requirements of the nineteenth rule of navigation.

We conclude that the collision was caused solely by the fault of the Zouave. Accordingly, the cause should be remanded to the district court, with instructions to dismiss the libel as against the Sea King, with costs, and to decree for the libelant against the Zouave for the whole amount of the loss, with interest and costs. The appellee, and the appellant, owner of the Sea King, are awarded costs of this appeal.